IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

EUGENIA K. REESE,

           Plaintiff,

v.                                CIVIL ACTION NO. 2:09-cv-00223

CAMC MEMORIAL HOSPITAL, INC.,

           Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is the Motion for Summary Judgment [Docket 30] by the defendant, CAMC Memorial Hospital, Inc. For reasons explained below, the Motion is **GRANTED**.

**I. Background**

*A. Facts*

The plaintiff, Eugenia K. Reese, is an African-American woman who worked as a nurse for Charleston Area Medical Center ("CAMC") in Charleston, West Virginia. CAMC operates a large regional hospital system. Reese began working at CAMC General Hospital in 1990. In 1995, she moved to a different CAMC facility in Charleston: CAMC Women's and Children's Hospital ("Women's and Children's").

In 2002 and 2003, Reese contends, she "began to express her opinion as to the racial comments being made in the workplace and made an informal complaint to the coordinator regarding unfair treatment in the assignment of duties." (Compl. ¶ 8.) She alleges that employees

and patients were treated differently at CAMC on the basis of race. Because of her complaints, Reese maintains, she was forced to work a heavy schedule and was passed over for promotions to supervisory positions. She contends that her complaints ultimately led to her employment being terminated.

Until 2003, Reese had never been disciplined by CAMC. But, in October 2003, she was reprimanded while working as a labor-and-delivery nurse at Women's and Children's. A patient who was thirty-four weeks pregnant was admitted. Reese was assigned to care for her. After a resident physician had broken the patient's water, Reese left the patient's room and went to the nurse's station. Reese explained that "[i]t was about time for [her] shift to be over," and she "was tired." (Reese Dep. 37:11-12.) At that point, Reese "remembered something that [she] needed." (*Id.* 37:14.) She decided to "just take five minutes to run down and get it and come back." (*Id.* 37:16-17.) Without telling anyone, Reese left the floor and went to a supply closet to get some hospital supplies. According to the reprimand report, while Reese was gone, other nurses "saw from the central monitor screen that the patient's fetal status was worsening. They overhead paged [Reese] to the desk, finding no response." (First Employee Discipline Form [Docket 30-2 at 2].) Reese's supervisor, charge nurse Debbie Fisher, did not know where Reese was. When Reese finally returned, Fisher was in the patient's room. According to Reese, Fisher "went complete." (Reese Dep. 37:19.) The baby was safely delivered and the patient recovered from delivery. Reese was charged with "serious misconduct" and suspended for one week.

Reviews of Reese's performance did not improve following her 2003 reprimand. In 2005, Reese received negative peer review comments. Examples include reports that Reese:

- "[d]oes not use time wisely, does not up pitocin or chart as protocol. Always going off somewhere. Never offers to help others. Every year told

>   the same things over & over and does not improve. Hangs out in the lounge instead of getting report";

- "[n]eeds to be more of a team player. Reports are hard to follow — scattered. Work not done in sufficient manner of time. Often work incomplete at end of shift when assuming care of her pt. Talks back to charge nurse. Does not take orders well";

- "is lucky that the staff does not document her late charting, late transferring patient and other violations — if they did she would be disciplined";

- and that "[s]ome staff is tired of continuing doing their own work and picking up the slack of those who do not have time management skills. It would be different if there were observable effort that she is trying. Year after year — it just gets old."

(Core Value Peer Review Comments [Docket 30-2 at 6].) While some comments indicate that Reese was "thoughtful" and "nice," those same comments are accompanied by statements talking about a "block" on her shoulders and that she is "too loud & defensive." (*Id.*)

Reese was formally reprimanded for a second time in 2006. This reprimand occurred after Reese sent a patient who was short of breath to another department for testing without an oxygen tank to assist her breathing. Following her second reprimand, Reese applied for and was accepted for a position in the Surgery Division at another CAMC hospital in Charleston, CAMC Memorial Hospital ("Memorial").

Negative reviews of Reese's performance continued at Memorial. During her surgery orientation, Reese's supervisor commented that Reese took too much time for her lunch break, that she had "a tendency to disappear," and that she made "inappropriate remarks" at "inappropriate times." (Orientation Progress Form [Docket 30-2 at 8].) She was given mixed marks on her progress. Finally, Reese was reprimanded at Memorial in September 2006 for several incidents. These included incorrect documentation, failing to timely count instruments during surgery, and

contaminating an instrument stand. (Third Employee Discipline Form [Docket 30-2 at 5].) After five months at Memorial, the third reprimand, and negative evaluations, CAMC terminated Reese's employment.

Reese does not dispute that these events occurred. Rather, she argues that they did not warrant termination and that the adverse employment actions taken against her were based on discriminatory motives, not her performance.

*B. Procedural History*

Reese filed a complaint against CAMC in the Circuit Court of Kanawha County, West Virginia, on January 9, 2009. She argues that CAMC terminated her employment because she had made comments regarding the racial atmosphere at the hospitals where she worked. This, she asserts, constituted employment discrimination. CAMC was served on February 13, 2009. It removed the case thirty days later. CAMC then filed a motion to dismiss on March 18, 2009, which I denied.

CAMC filed the instant summary judgment motion on June 11, 2010. According to my April 12, 2010 Order, the parties had until July 5, 2010, to file responses to dispositive motions. Reese did not to respond until July 12, 2010. Ordinarily, I would disregard such a tardy submission. But, even in light of her response, the evidence supports summary judgment against Reese.

**II. Standard**

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989).

**III. Analysis**

Reese alleges that CAMC violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), as well as the West Virginia Human Rights Act, West Virginia Code section 5-11-9 (the "WVHRA"). The Supreme Court of Appeals of West Virginia has held that an employment discrimination claim under the WVHRA mirrors an identical claim under Title VII. *Barefoot v. Sundale Nursing Home*, 457 S.E.2d 152, 159 (W. Va. 1995).

The Fourth Circuit has explained that a plaintiff may avoid summary judgment on a Title VII claim "through two avenues of proof." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004). Under the first avenue,

> [a] plaintiff can survive a motion for summary judgment by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor such as race motivated the employer's adverse employment decision . . . . Alternatively, a plaintiff may proceed under the *McDonnell Douglas* [ *Corp. v. Green*, 411 U.S. 792 (1973) ] "pretext" framework, under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination.

*Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005).

Reese has not shown any direct or circumstantial evidence of racial discrimination. Indeed, when asked at her deposition, "[W]hat kind of overt racism would you say that you experienced, if any?," Reese replied, "Oh, man. I don't know. I can't think of any right this second." (Reese Dep. 47:2.) Absent the requisite evidence, Reese's only avenue to survive summary judgment is to proceed under the *McDonnell Douglas* burden-shifting framework.

The Fourth Circuit has explained that "[t]he Supreme Court constructed the elements of the prima facie case to give plaintiffs who lack direct evidence a method for raising an inference of discrimination." *Diamond*, 416 F.3d at 318. To prove a *prima facie* case of employment discrimination, the plaintiff must show (1) that she was a member of a protected class; (2) that her employer made an adverse decision concerning her employment; and (3) that but for the plaintiff's protected status, the adverse decision would not have been made. *Merritt v. Old Dominion Freight Line, Inc*, 601 F.3d 289, 294 (4th Cir. 2010); *Mayflower Vehicle Systems, Inc. v. Cheeks*, 629 S.E.2d 762, 772-73 (W. Va. 2006). "The burden of establishing a prima facie case of disparate treatment is not onerous." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-54 (1981). But, if the

employer offers a legitimate and nondiscriminatory reason for the adverse employment action, then the plaintiff has the burden of proving by a preponderance of the evidence that the offered reason is pretextual. *Merritt*, 601 F.3d at 294; *Cheeks*, 629 S.E.2d at 773.

Under both Title VII and the WVHRA, a plaintiff may show pretext under a "mixed motive" theory. *See Worden v. SunTrust Banks, Inc.*, 549 F.3d 334, 342 (4th Cir. 2008); *Cheeks*, 629 S.E.2d at 773. A plaintiff may prove a mixed-motive pretext by showing that an illegal motive played a significant part in her employer's adverse decision. *See Cheeks*, 629 S.E.2d at 773 ("Mixed motive cases are, simply, cases involving a mixture of legitimate and illegitimate motives; there is no one single 'true' motive behind the decision. Instead, the decision is a result of multiple factors, at least one of which is legitimate and at least one of which is illegitimate."). "The final pretext inquiry 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination,' which at all times remains with the plaintiff." *Merritt*, 601 F.3d at 294 (quoting *Burdine*, 450 U.S. at 256) (alteration in original). The Fourth Circuit has explained that "once an employer rebuts the prima facie case with a legitimate, nondiscriminatory reason for the employment action, 'the *McDonnell Douglas* framework—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*.'" *Diamond*, 416 F.3d at 318 (alterations in original) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43 (2000)).

Reese has carried her burden of making a *prima facie* case of discrimination. Reese undoubtedly satisfies the first two requirements. Her complaints about racial discrimination is a protected activity, and her reprimands and termination were adverse employment actions. And, although her evidence of causation is scant, it is sufficient to make a *prima facie* case. The Fourth

-7-

Circuit has recognized that, in some circumstances, temporal proximity between a protected activity and an adverse employment action may be enough to make a *prima facie* case of discrimination. *See Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989) (concluding that plaintiff's showing that she was fired within a short period after filing a discrimination charge was sufficient to make a *prima facie* case); *see also Dye v. Potter*, 2008 WL 4181373 at 8 (S.D. W. Va. September 8, 2008) ("Temporal proximity between the protected activity and the adverse action is sufficient to show a causal connection for purposes of establishing a *prima facie* case of retaliation."). Reese worked at CAMC for over a decade and was never formally reprimanded. Yet, only a few months after she allegedly began complaining about the racial environment at CAMC, she received a string of disciplinary measures. This temporal proximity between her protected activity and the adverse employment action narrowly satisfies Reese's *prima facie* obligation.

Nevertheless, Reese cannot sustain her burden to preclude summary judgment. CAMC has provided a legitimate, nondiscriminatory reason for terminating Reese's employment. Reese was formally disciplined on a number of occasions for "Serious Misconduct." She was warned that, if repeated, these offenses would result in termination. Nothing in this record, other than Reese's conclusory allegations, supports a finding that CAMC's decision to terminate her employment had anything to do with her status as a member of a protected class.

Nor has Reese has not offered anything beyond a mere scintilla of evidence that CAMC's actions were based on illegitimate motives. To the contrary, the record reflects that on three separate occasions, Reese's conduct put patient safety at risk. CAMC's decision was justified by legitimate reasons. Reese falls far short of proving, by a preponderance of the evidence, that CAMC used any illegitimate factor in its decision. Simply being a member of a protected class does not immunize

employees from legitimate adverse employment decisions. Reese's claims must therefore be dismissed.

**IV. Conclusion**

The Motion for Summary Judgment [Docket 30] is **GRANTED**. This case is **DISMISSED** and shall be **STRICKEN** from the docket. The court **DIRECTS** the Clerk to send a copy of this written opinion and Order to counsel of record and any unrepresented party.

    ENTER:    July 22, 2010

*Joseph R. Goodwin*
Joseph R. Goodwin, Chief Judge